**James Richard BOWDEN, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15922.**

United States Court of Appeals
Fifth Circuit.

June 30, 1956.

Rehearing Denied July 28, 1956.

---

938

J. Richard Bowden, in pro. per.

Morton K. Rothschild, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson, Atty., John Potts Barnes, Chief Counsel, Int. Rev. Ser., Charles E. Lowery, Sp. Atty., Hilbert P. Zarky, Atty., L. W. Post, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The petitioner, James Richard Bowden, herein called the taxpayer, and his two sisters, in 1950, created an irrevocable trust by a written agreement with Trust Company of Georgia. The donors transferred to the trustee assets of a value of slightly more than $300,000. The contribution of the taxpayer to the trust res was of the value of $100,392.48. The taxpayer was then fifty-two years of age. The trust agreement provided for payment of $400.00 per month to each donor for life. The rights to these payments inured, upon the death of a donor, to his or her lineal heirs with gifts over if no lineal heirs survived. The agreement provided that the trust is to terminate a year after the death of the last surviving donor. Other provisions of the agreement are not material to the issue presented on appeal.

The taxpayer returned for Federal gift tax the remainder after his equitable life interest in the trust. In valuing the remainder the taxpayer assigned a value to the life interest, deducted it from the amount of the assets transferred to the trustee, and reported the difference as the value of the remainder. The taxpayer showed that he might have purchased from an insurance company an annuity which, at his age, would return to him $400.00 per month for his lifetime, at a cost of $93,680. Using this amount as the value of the life interest, the remainder after his death would have a value of $6,712.48. This figure was claimed by the taxpayer to be the value of his taxable gift. The Commissioner, by using the actuarial tables set out in Regulation 108, § 86.19(f), § 86.19(g), found the life interest value to be $58,081.77, and valued the taxable remainder at $42,310.71. The Commissioner determined a tax deficiency and the Tax Court sustained the Commissioner's determination. The taxpayer has appealed.

By the Internal Revenue Code it was provided:

"If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." § 1005, Int.Rev.Code, 1939, 26 U.S.C.A. § 1005.

The controversy here centers around the regulations [1] promulgated by

1. "(a) *General.*—The statute provides that if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.

the Commissioner and the proper construction and application to be placed upon them. At the outset, the taxpayer challenges the provision of the regulation which provides that "Where the donor transfers property in trust or other-

The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The value of a particular kind of property is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value at the time of the gift of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All revelant facts and elements of value as of the time of the gift should be considered.

\* \* \* \* \*

"(f) *Annuities, life estates, remainders and reversions; gifts made after December 31, 1951—(1) In General.*— Annuities purchased from life insurance companies, or other companies regularly engaged in issuing annuity contracts and life insurance policies are to be valued as explained in paragraph (i) of this section. Except with respect to the aforementioned annuity contracts and insurance policies, the values of annuities, life estates, remainders, and reversions are to be computed by the methods hereinafter prescribed in this paragraph. Where the donor transfers property in trust or otherwise and retains an interest therein, the value of the gift is the value of the property transferred less the value of the donor's retained interest. Where the donor assigns or relinquishes an annuity, life estate, remainder, or reversion which he holds by virtue of a transfer previously made by himself or another, the value of the gift is the value of the interest transferred. In either case the present worth of the interest to be valued is to be computed with the use of Table I or Table II of this paragraph if it is dependent upon the continuation of, or termination of the life of one person or upon a term-certain. If such interest is dependent upon more than one life or there is a term-certain concurrent with one or more lives, see subparagraph (5) of this paragraph. For the purpose of the computation the age of a person is to be taken as the age of that person at his nearest birthday.

"(2) *Annuities.*—(i) *Payable annually at end of year.*—If the annuity is payable annually at the end of each year during the life of an individual, the amount payable annually should be multiplied by the figure in column 2 of Table I opposite the number of years in column 1 nearest the age of the individual whose life measures the duration of the annuity, or if payable for a definite number of years the amount payable annually should be multiplied by the figure in column 2 of Table II opposite the number of years in column 1.

\* \* \* \* \*

"(ii) *Payable at end of annual, semiannual, quarterly, monthly or weekly period.*—If the annuity is payable at the end of semi-annual, quarterly, monthly, or weekly periods, the value should be determined by multiplying the aggregate amount to be paid within a year by the figure in column 2 of Table 1 opposite the number of years in column 1 nearest the actual age of the person whose life measures the annuity, or the figure in column 2 of Table II opposite the number of years the annuity is payable, as the case may be, and then multiplying the product by 1.0171 for weekly payments, by 1.0159 for monthly payments, by 1.0130 for quarterly payments, or by 1.0087 for semiannual payments.

\* \* \* \* \*

"(g) *Annuities, life estate, remainders and reversions; gifts made prior to January 1, 1952.*—In the case of gifts made prior to January 1, 1952, the general principles and methods prescribed in paragraph (f) of this section (with one exception set forth in the next paragraph) are to be followed but the present worth of the interest to be valued is to be computed with the use of Table A or Table B (which appear at the end of this section) and if neither table is applicable the computation is to be made upon the basis of the Actuaries' or Combined Experience Table of Mortality, as extended, and interest at the rate of 4 percent a year, compounded annually. In the computation of the value of annuities the factors 1.01820 for monthly payments, 1.01488 for quarterly payments, and 1.00990 for semiannual payments are to be substituted for the factors appearing in (f) (2) (ii) of this section; \* \* \*.

\* \* \* \* \*

"(j) *Other property.*—Any property not specifically treated in this section should be valued in accordance with the rule laid down under (a) hereof." Reg. 108, § 86.19(a), (f) (1), (f) (2) (i), (f) (2) (ii), (g), (j), as amended by T.D. 5902, 1952–1 C.B. 167.

wise and retains an interest therein, the value of the gift is the value of the property transferred less the value of the donor's retained interest." This, says the taxpayer, is an attempt of the Commissioner to promulgate by regulation a rule which may require, and in his case does require, a finding contrary to the existing facts and an unconstitutional invasion of the judicial province of factual determination. The taxpayer sets out nine items of costs and charges to be borne in the administration of the trust and says that these items should be considered as factors in reaching the value of the trust remainder. Among these are trustee's fees. The trustee's fees, and provisions as to payment thereof from principal or income, are set forth in a schedule annexed to the trust agreement. This schedule incorporates an agreement between the donors and the trustee that the fees and the source of their payment will be adjusted from time to time. Hence trustee's fees cannot be accurately computed and cannot be considered as an element of value. Insurance premiums are noted as an expense of the trust but as all of the initial trust assets were intangible assets the need for insurance is not shown. Brokers' commissions, designated as trust expense, cannot even be estimated, and court costs and attorneys' fees seem too remote for consideration. Ad valorem and intangible taxes are other items that are, at best, speculative in amount. This is particularly true where different types of intangibles are taxed at varying rates and some are not taxed at all. Ga.Code Ann. §§ 92–114 et seq., 92–161 et seq. Without deciding whether these cost and expense charges are proper factors to be included in ascertaining the value of a gift of a trust remainder after a reserved life interest, we do conclude that no basis is shown for a reckoning of any such factors. It may be noted, however, that the Supreme Court of the United States has said that the purposes of the Act were carried out by regulations which "made specific provisions for application of the tax to, and determination of the value of, 'a remainder * * * subject to an outstanding life estate'". Smith v. Shaughnessy, 318 U.S. 176, 63 S.Ct. 545, 547, 87 L.Ed. 690.

■ The taxpayer, having concluded that the provisions of Reg. 108, § 86.19 (f) and (g) are invalid as applied to his situation, invokes § 86.19(j) to avail himself of the principles of § 86.19(a). To find all relevant facts and elements of value which, under § 86.19(a), should be considered, the taxpayer would not look elsewhere than to the cost of an annuity of $400 per month to be issued by a life insurance company on the theory that such cost is based not only upon actuarial data and anticipated investment yields accurately computed but also properly estimates the cost and expense elements. It was not shown and cannot be assumed that the amount which insurance companies charge for annuities are, substantially, the amounts required to cover the obligations incurred under their annuity contracts. It is argued by the taxpayer, but no facts supporting the argument are shown, that the costs, charges and expenses of administering a trust would be essentially the same in the trust as in an annuity. The taxpayer takes for granted that investment yields under the management of a trustee would be the same as that produced by an insurance company. But the experience of neither is disclosed of record. The taxpayer affirms that unless it can be said that the trustee, Trust Company of Georgia, can "beat the investment and experience record" of the insurance companies then annuity cost should be taken as the value of the retained interest. But can it be said that the trustee may not invest at higher yields than the insurance companies would produce? It may be observed that the taxpayer's trustee has been given "full power and authority * * * to * * * invest and reinvest * * * as and when it deems advisable * * * irrespective of the laws of Georgia governing the investment of trust funds; * * * said Trustee may * * * invest and reinvest the property belonging to said trust in the same manner as if it

were the absolute owner thereof, any law of the State of Georgia to the contrary notwithstanding." We cannot say that it would be impossible for the trustee, in the exercise of its broad discretionary investment powers, to secure for the trust a yield in excess of that which would be returned upon insurance company investments. And, as has been said by the Court of Appeals, Ninth Circuit:

"Annuitants, as a rule, are a self-selected group, and the experience that insurance companies have in respect of their mortality rate is not the same experience that they have with the average run of persons. From this we understand that annuity mortality tables do not purport to reflect the general mortality experience but only the experience of a more or less limited group who, so to speak, bet against the insurance companies that they will outlive the normal expectancy." Koshland's Estate v. Commissioner, 9 Cir., 1949, 177 F.2d 851, 852.

In ascertaining the cost basis of annuities purchased by a taxpayer from charities, where the sums paid were substantially more than the amount for which annuities could have been acquired from insurance companies, the Board of Tax Appeals apparently held that the value would be that for which insurance companies would issue annuity contracts, and the remainder of the payments would be regarded as gifts. Anna L. Raymond, 1939, 40 B.T.A. 244. A rule applied in determining the cost basis of an annuity purchase is not persuasive in a case where the taxpayer has created a trust.

The taxpayer urges that the annuity tables incorporated in the regulation at the time of the gift were outmoded, and that since the tables were constructed life expectancy has increased and the return upon investments has decreased. This, said the taxpayer, is demonstrated by the adoption by the Treasury Department of new tables effective as of December 31, 1951,[2] five months after the mak-

ing of the gift here considered. The Tax Court disposed of the taxpayer's contention that the table was outmoded and untrue by the statement that "No evidence was introduced on this point". The Court of Appeals of the First Circuit, in 1953, after the new table had been adopted, applied the earlier tables in valuing the remainder interest of a trust created in 1942. The same theory of valuation was urged there as here, that is, to deduct the amount which an insurance company would charge to provide the life interest benefits from the value of the trust estate. For the Court, Judge Magruder said:

"It seems clear that this method of calculation used by petitioner was improper, since there is a 'loading factor' (representing the company's commissions and other expenses) included in every commercial insurance company's premiums. It was also improper since the lower interest rates used by most of these insurance companies are largely due to the fact that their investments are usually considerably restricted by state law.

\* \* \* \* \* \*

"We think, therefore, that tables which have enjoyed such widespread and long-standing use should not be rejected as wholly unreasonable, even though they may perhaps be susceptible of minor improvements in particular respects. Such discrepancies as may exist will no doubt average out in the long run; and while this may sometimes prove to be unfortunate for individual taxpayers, the discrepancies may have to be suffered in the interest of a simplified overall administration of the tax laws.

\* \* \* \* \* \*

"We do not think that the Tax Court erred in accepting the 4 per cent interest factor used by the Commissioner. The evidence indicated that virtually all the states in

2. T.D. 5902, C.B. 1952–1, p. 167.

1942 used an interest factor of 4 per cent or even higher for inheritance tax purposes. Moreover, in view of the broad investment powers conferred upon the trustees in the two Louise Trusts, it would perhaps not be unreasonable to anticipate a 4 per cent average yield. We think that petitioner was in no way prejudiced by the use of the 4 per cent interest rate." McMurtry v. Commissioner, 1 Cir., 1953, 203 F.2d 659, 666.

In the foregoing case, Judge Woodbury declined to go with the majority and thus expressed his own views:

"I quite agree that this case must be remanded to the Tax Court for further proceedings. But in doing so I would condemn as arbitrary and capricious the use of tables complied in 1836 resting upon experience with the life span of insured English males as the basis for computing the life expectancy of two American females a century or so later." 203 F. 2d 667.

We do not hold that the tables have, by reason of long standing and frequent application, attained the dignity and force of law. The Commissioner has conceded, at least in one case, that the 4% rate is not proper in all cases. Estate of Green, 1954, 22 T.C. 728. So it seems, the correctness of actuarial data might be shown to be erroneous. The Supreme Court has taken judicial notice that 4% was, in 1920, generally assumed to be the earning power of money safely invested. Simpson v. United States, 252 U.S. 547, 40 S.Ct. 367, 64 L.Ed. 709. We shall not hold it is now more than a skilled and experienced trustee might produce under unlimited discretionary investment powers. Cf. United States v. Puscedu, 5 Cir., 1955, 224 F.2d 5.

■ The determination of a deficiency by the Commissioner is prima facie correct and the burden is on the taxpayer to prove it is wrong. Kilpatrick v. Commissioner, 5 Cir., 1955, 227 F.2d 240. Cf. Commissioner of Internal Revenue v.

Disston, 325 U.S. 442, 65 S.Ct. 1328, 89 L.Ed. 1720, 158 A.L.R. 166; Laughinghouse v. Commissioner, 5 Cir., 1955, 227 F.2d 477. As we have shown, the burden has not been met by a showing of the cost of an annuity from an insurance company. The decision of the Tax Court is

Affirmed.