397 F.2d 245
 Leonard ROSEN, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Dorothy ROSEN, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Julius J. ROSEN, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Claire A. ROSEN, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 12013-12016.
 United States Court of Appeals Fourth Circuit.
 Argued April 2, 1968.
 Decided June 14, 1968.
 
 Jacquin D. Bierman, New York City, on brief for petitioners.
 Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, and David English Carmack, Attys., Department of Justice, on brief, for respondent.
 Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.
 CRAVEN, Circuit Judge:
 
 
 1
 These consolidated appeals are taken from a decision of the Tax Court adverse to the taxpayers/appellants Leonard Rosen, Dorothy Rosen, Julius J. Rosen and Claire A. Rosen. The only issue presented for review is their entitlement to annual exclusions of up to $3,000 per donee in the computation of gift taxes. We hold that the taxpayers are entitled to the exclusions for the years in question, 1961, 1962 and 1963, in respect to the "income interests" of shares of Gulf American Land Corporation donated by the taxpayers to trusts created by them in 1961. We further hold that valuation of the donated income interests may be accomplished by reference to actuarial tables published by the Commissioner and we remand the case to the Tax Court for a (1) determination as to which of the tables is most appropriate to value the donated income interests and (2) determination of the precise dollar amount of exclusion to which the taxpayers are entitled for each year.[1]
 
 
 2
 Leonard Rosen and his brother Julius J. Rosen are in substantial control of Gulf American Land Corporation (Gulf American), a business incorporated in Florida in 1957 and devoted to the acquisition and development of large tracts of unimproved real estate into a planned community in which homesites, multiple dwelling sites and commercial and industrial lots are offered for sale. Through subsidiaries, the company has also engaged in the construction of houses, in land drainage, the construction of roads and waterways, etc. The company's major project during the years 1961-1963 was the development of a large tract of land on the southwest coast of Florida. The company's basic policy has been to increase its raw land inventory for development and subdivision purposes.
 
 
 3
 Although Gulf American stock is held by public shareholders as well as the Rosens, the company has never paid a dividend on its common stock but has retained all of its earnings for growth purposes. It is the failure of the company to pay dividends which has created the problem presented on appeal.
 
 
 4
 On September 14, 1961, Leonard Rosen transferred 21,000 shares of Gulf American common stock in trust, naming his three children as beneficiaries. On the same date Julius J. Rosen transferred 24,000 shares of Gulf American in trust for the benefit of his four children. The trust agreements, executed in 1961, were identical in all material respects, except for the number of shares constituting the res, the beneficiaries named therein, and except for the periods during which income was to be paid to each beneficiary prior to the distribution of the corpus. The entire income interest of each trust was payable to the beneficiaries no less frequently than annually and the corpus of the trust was payable to the beneficiaries when they reached specified ages. In the Leonard Rosen trust the corpus was distributable to each beneficiary in two installments, upon the beneficiaries reaching the ages of 25 and 30. The corpus of the Julius J. Rosen trust was distributable in three installments, at the ages of 25, 30 and 35. Provisions were made for gifts over in the event of the death of a beneficiary.
 
 
 5
 The trustees named in each trust were either members of the Rosen family or persons closely associated with the Rosens or with Gulf American. Significant to the disposition of this case the trustees were given the power to sell and reinvest the corpus of the trust (the donated Gulf American shares), and the power to hold and invest in non-income producing property.
 
 
 6
 In 1962 and 1963 Leonard and Julius J. Rosen made further gifts of Gulf American shares to the trust established by them. (Dorothy and Claire A. Rosen have filed consents to have the gifts of their husbands, Leonard and Julius, treated as if made one-half by each spouse.)
 
 
 7
 The claimed exclusions are based on Section 2503(b) of the Internal Revenue Code, 26 U.S.C.A. § 2503(b), which permits exclusion from the taxpayer's annual gross gifts of $3,000 per donee. The claimed exclusions relate only to the "income interests" of the donated shares. It is conceded that the corpus of each of the Rosen trusts is to be treated as a future interest, "limited to commence in use, possession, or enjoyment at some future date or time," C. I. R. v. Disston, 325 U.S. 442, 446, 65 S. Ct. 1328, 1330, 89 L.Ed. 1720 (1945), for which the Section 2503(b) exclusion is expressly not available. Since the Gulf American shares do not have, and have never had, a specific yield (no dividends have been paid), valuation of the "income interests" was made by the taxpayers by applying the actuarial factors taken from Table I, Column 3 of Section 25.2512(f) of the I.R.S. Gift Tax Regulations. The actuarial factors assume an income yield of 3½ percent and are intended to reflect, for tax purposes, the present worth of a life estate and a remainder interest. Resort to the tables is justified in cases where valuation necessarily presents an element of speculation and where use of the tables is actuarially sound. Bowden v. C. I. R., 234 F.2d 937 (5th Cir. 1956), McMurtry v. C. I. R., 203 F.2d 659 (4th Cir. 1953). The factors "seldom accurately predict the value in a particular situation but prove to be accurate when used in a great number of cases." Hipp v. United States, 215 F.Supp. 222 (W.D.S.C. 1962).
 
 
 8
 Use of the tables is prohibited to the taxpayer only in cases where such usage would result in an "unrealistic and unreasonable" valuation. Weller v. C. I. R., 38 T.C. 790, 803 (1962). Contrary to the government's contention we think it unreasonably unrealistic to deny value to the present interest concededly possessed by the donees. Only the most unsophisticated investor, certainly not the purchaser of growth stocks, looks to currently established dividend yield to value his present interest. Although it is hope for the future that accounts for the investment irony of present value inversely proportioned to yield, such hopes are not always long postponed in an era of conglomerate merger. To deny to the taxpayers here the use of the tables is to treat, for tax purposes, the donated income interests as having no value at all.
 
 
 9
 Moreover, the trust instruments vested the trustees with the power to sell the donated shares and to reinvest the proceeds in income producing property. The Tax Court, erroneously we think, considered that the power was "illusory" because the trustees were possessed of a present intention not to exercise it. True, the taxpayers have stipulated that: "In the view of the Trustees the probability of future dividends in substantial amounts was sufficient to warrant retention of stock, notwithstanding the absence of a current income * * *. It was the specific belief of the Trustees that retention of Gulf American stock would furnish greater overall benefits to the beneficiaries than would an immediate sale and investment of the proceeds in then currently income-producing property." It does not seem to us that a business decision not presently to change an investment voids the power to do so.
 
 
 10
 It is important to note that it has not been suggested to us that the "income interest" was valueless. Rather the government concedes that a present income interest (rather than a future interest, C. I. R. v. Disston, supra) was in fact donated. The concession seems to us near fatal. The government entertains two inconsistent positions — on one hand conceding that a valuable right was donated and on the other contending that for tax purposes the right is valueless. The cases cited to us by the government generally stand for the proposition that the "ascertainable value" test is not met (and hence the exclusion not available) where some impediment, power or contingency stands in the way of actual realization of income. See 5 Mertens, Federal Gift and Estate Taxation § 38.08 (1959). This is not a case involving discretion to withhold income, C. I. R. v. Disston, supra, nor one where the trustee may destroy the right to receive income by exercise of a power to invade the corpus, Funkhouser's Trusts v. C. I. R., 275 F.2d 245 (4th Cir. 1959), or by exercise of a power to terminate the trust, La Fortune v. C. I. R., 263 F.2d 186 (10th Cir. 1958). Nor is the power to sell the Gulf American shares and reinvest in income producing property truly illusory in the sense that substantial impediments exist to its exercise, e. g., the nature of the underlying property causes conversion to be improbable. Hamm v. C. I. R., 20 T.C. 1814 (1961), aff'd 325 F.2d 934 (8th Cir. 1963). On the contrary, Gulf American shares appear to be freely marketable — the stock is held publicly and is listed on the American Stock Exchange.
 
 
 11
 In Estate of Irma Green, 22 T.C. 728 (1954), the specific yield of the income interest was ignored by the Commissioner in favor of an application of an actuarial table producing less income than actually realized. It is a difference without a distinction that in Irma Green use of the tables benefited the government and here their use benefits the taxpayers. See Hall v. United States, 353 F.2d 500 (7th Cir. 1965); Bowden v. C. I. R., 234 F.2d 937 (5th Cir. 1956); McMurtry v. C. I. R., 203 F.2d 659 (1st Cir. 1953).
 
 
 12
 There is, of course, no justification for a double standard. Neutral principles forbid that the Commissioner be allowed to apply the tables where to do so produces greater revenue and to refuse application where it does not. It is conceded that a valuable right to receive income has been donated. The right is incapable of precise valuation by reference to a specific yield. Absent extraordinary circumstances, and without regard to the amount of revenue produced, we think the taxpayers are entitled to resort to the actuary tables promulgated by the Commissioner himself. Hipp v. United States, 215 F.Supp. 222 (W.D. S.C.1962). "The United States is in business with enough different taxpayers so that the law of averages has ample opportunity to work." Gelb v. C. I. R., 298 F.2d 544, 552 (2d Cir. 1962).
 
 
 13
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 For a more complete statement of the facts of this case, see the opinion of the Tax Court, Rosen v. C.I.R., 48 T.C. 80 (1967)