MARYLAND NATIONAL BANK and Ralph Norris, Personal Representatives of the Estate of Katherine L. N. Willis, Deceased, Appellants,

v.

UNITED STATES of America, Appellee.

No. 78-1426.

United States Court of Appeals,
Fourth Circuit.

Argued March 13, 1979.

Decided Nov. 9, 1979.

Rehearing Denied Jan. 11, 1980.

Harry D. Shapiro, Baltimore, Md. (Jacques T. Schlenger, John K. Barry, Venable, Baetjer & Howard, Baltimore, Md., on brief), for appellants.

Robert T. Duffy, Tax Div., Dept. of Justice, Washington, D. C. (Russell T. Baker, Jr., U. S. Atty., Gerard P. Martin, Asst. U. S. Atty., Baltimore, Md., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Michael L. Paup, Tax Div., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before BUTZNER and HALL, Circuit Judges, and JOSEPH H. YOUNG, United States District Judge for the District of Maryland, sitting by designation.

BUTZNER, Circuit Judge:

Maryland National Bank, executor of the estate of Katherine L. N. Willis, deceased, appeals the district court's denial of claims for refund of gift taxes based on the disallowance of seventeen $3,000 exclusions in both 1971 and 1972. Before her death, Mrs. Willis contended that her transfers into an inter vivos trust were in part gifts to the beneficiaries of income qualifying for the annual $3,000 per donee exclusion from taxation under I.R.C. § 2503(b), 26 U.S.C. § 2503(b) (1976), and she sought to value the worth of the income interests by refer-

ence to the actuarial tables of Treas.Reg. § 25.2512–9(f) (1970). The district court ruled that the gifts did not qualify for exclusion, and it held that use of the actuarial tables was impermissible.[1] We affirm.

The relevant, historical facts are not in dispute. By successive assignments in 1971 and 1972, Mrs. Willis transferred her one-half interest in a partnership owning real estate into an inter vivos trust for the benefit of seventeen members of her family. The other one half of the partnership was held in trust under the will of E. Paul Norris. The partnership property had been owned by members of these two families, Norris and Willis (descendants of a common ancestor), for over 70 years. One tract was a farm; the other was waterfront property which contained recreational facilities, including a tennis court and swimming pool. Both tracts contained rental housing. Mrs. Willis had rented one of the houses on the waterfront property for a number of years before and after placing her interest in trust. The Norris family owned and occupied rent free another dwelling on this piece of land. Despite gross receipts from rents and farming, between 1968 and 1976 the partnership produced a net income of only $774.91 in 1971. That income was not distributed to the partners. All other years showed net losses, which aggregated $42,-000 for the years 1963 through 1972 and $13,000 during the period 1973–76.

Under the partnership agreement the partners held options on portions of the land. They also held rights of first refusal on any resale to third parties of land purchased under the options. A large portion of the waterfront property, approximately 45 acres including the recreational facilities, could not be partitioned for sale.

The Willis trust named as trustees three of the seventeen beneficiaries and directed them to disburse "the entire net income of the trust estate" at least annually among the beneficiaries in set proportions. The trustees were given broad powers, without incurring liability, to invest in or retain nonproductive assets. They were required to disburse within three years rather than reinvest the net proceeds received from any sale of the partnership's land unless the proceeds were "used to purchase an additional or increased interest in [the original holdings], whether the purchase is of the real estate directly or indirectly by purchase of an interest in a partnership or other entity holding said real estate." Thus, the trustees could not convert the unproductive real estate into other holdings. The trustees had no explicit duty to make the property generate income.[2]

Although the parties phrase the issues somewhat differently, they agree that the district court's judgment raises two questions on appeal: (1) Did Mrs. Willis give her beneficiaries present income interests that qualify for the $3,000 exclusion from gift tax? and (2) Can the income value of the gifts be computed by use of the actuarial tables?

■ Only gifts of "present interest" are eligible for exclusion under § 2503(b) of the Internal Revenue Code. The parties agree that the corpus of the trust was a gift of a future interest that cannot be excluded. Therefore, the unqualified right to receive profits from the operation of the partnership's business presents the only arguable circumstance for holding that the beneficiaries received an excludable present income interest.

Mrs. Willis' executor contends that the provisions of the trust agreement are controlling. The executor insists that Mrs. Willis was entitled to the $3,000 exclusions under the statute and regulations because the trustees absolutely must disburse annually to the beneficiaries all the income from the partnership interest. In response, the government says one must probe deeper: that before the executor can rely on the disbursal clause of the trust, the executor

---

1. The district court's opinion is reported as *Willis v. United States,* 450 F.Supp. 52 (D.Md. 1978).

2. Other provisions of the trust are set forth in the district court's opinion, 450 F.Supp. at 53–54.

must prove that income will be available for distribution. Lacking such proof, the government continues, the beneficiaries have only a future interest, not a present interest qualifying for exclusion within the meaning of the statute and regulations.

■ The Internal Revenue Code does not define either future or present interest. The Service, however, has stated that "'[f]uture interest' is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession, or enjoyment at some future date or time." Treas.Reg. § 25.2503–3(a) (1958). In contrast, a present interest is "[a]n unrestricted right to the immediate use, possession, or enjoyment of property or the income from property . . . ." Treas.Reg. § 25.2503–3(b) (1958). The Supreme Court in *Fondren v. Commissioner,* 324 U.S. 18, 20–21, 65 S.Ct. 499, 501, 89 L.Ed. 668 (1945), construing these definitions, held that the distinction turns on whether the donor conferred a real and immediate benefit upon the donee:

> [I]t is not enough to bring the exclusion into force that the donee has vested rights. In addition he must have the right presently to use, possess or enjoy the property. These terms are not words of art, like "fee" in the law of seizin, . . . but connote the right to substantial present economic benefit. The question is of time, not when title vests, but when enjoyment begins. Whatever puts the barrier of a substantial period between the will of the beneficiary or donee now to enjoy what has been given him and that enjoyment makes the gift one of a future interest within the meaning of the regulation.

The Internal Revenue Code's "present interest" differs from the technical concept of a present estate for life or a term of years, because even a vested interest may be considered a "future interest" for gift tax purposes if the donee gets no immediate use, possession, or enjoyment of the property. The donor is entitled to the exclusion only if

he has conferred on the donee "the right to substantial present economic benefit." 324 U.S. at 20, 65 S.Ct. at 501.

These principles are exemplified by *Commissioner v. Disston,* 325 U.S. 442, 65 S.Ct. 1328, 89 L.Ed. 1720 (1945). There the trust had income, but it placed such limitations on disbursement that the Court concluded that only a future interest was created. It was in that context that the Court explained:

> In the absence of some indication from the face of the trust or surrounding circumstances that a steady flow of some ascertainable portion of income to the [beneficiary] would be required, there is no basis for a conclusion that there is a gift of anything other than for the future. The taxpayer claiming the exclusion must assume the burden of showing that the value of what he claims is other than a future interest. 325 U.S. at 449, 65 S.Ct. at 1331.

The absence of a steady flow of ascertainable income to the beneficiary can result just as surely from a lack of any prospect of income as it can from restrictions on the trustees' power to disburse income. In either event the result is the same, and the exclusion should be denied because no present interest was conveyed. *Disston* places a dual burden on the taxpayer—the first is implicit, the second explicit. The taxpayer must show that the trust will receive income, and, second, that some ascertainable portion of the income will flow steadily to the beneficiary.

Application of these principles to the facts of this case presents little difficulty. The executor has failed to prove that the partnership has produced any income for distribution to the beneficiaries, that steps have been taken to eliminate the losses it has sustained annually, or that there will be any income in the foreseeable future. Moreover, the trust authorizes the trustees to hold this unproductive property, and it bars them from reinvesting for more than three years the proceeds from the sale of partnership real estate, which is the trust's only significant asset, into stocks, bonds, or

other real estate to generate income. In sum, neither the circumstances of the case nor the provisions of the trust realistically establish that the beneficiaries actually will receive a steady flow of income.

The executor, however, urges that this hiatus in the proof can be filled by use of the actuarial tables, which calculate the present value of an estate for a term of years by assuming a prescribed rate of return on the corpus. *See* Treas.Reg. § 25.-2512–9(f) (1970). It is undisputed that if use of the tables is permissible, the present worth of each beneficiary's interest would exceed $3,000.

█ The tables are appropriate only when there is proof that some income will be received by the trust beneficiaries. "Where the property may yield no income at all . . . the tables are not applicable." *Elise McK. Morgan,* 42 T.C. 1080, 1088 (1964), *aff'd,* 353 F.2d 209 (4th Cir. 1965). The tables are designed to calculate the value of a present interest, not create it. Indeed, even if it is assumed that the disbursal clause of the trust standing alone is facially sufficient to create a present interest, the uncertainty that the beneficiaries will receive income precludes exclusion, whether or not resort is had to the tables. *See Berzon v. Commissioner,* 534 F.2d 528 (2d Cir. 1976); *Stark v. United States,* 477 F.2d 131 (8th Cir. 1973); *Fischer v. Commissioner,* 288 F.2d 574 (3d Cir. 1961). Although the Willis trust gave the beneficiaries an unconditional right to receive income, bestowing this right did not of itself create a present interest. Without any prospect of income, the bare right to receive income was illusory, and all that characterized the gift was the future enjoyment of the corpus.

*Rosen v. Commissioner,* 397 F.2d 245 (4th Cir. 1968), upon which the executor primarily relies, is readily distinguishable. In that case, the evidence disclosed, and the government acknowledged, that a gift in trust of publicly traded corporate stock conferred a present interest, even though the stock had never paid dividends. The corporation was a profitable enterprise, and it had retained its earnings for growth. The trustees intended to hold the stock, although they had authority to sell, because they anticipated that dividends would be paid in the future and the stock would enhance in value. The income component of the gift was currently reflected by the stock's growth. Pointing out that the present income interest had value, we concluded that use of the tables would not "result in an 'unrealistic and unreasonable' valuation." 397 F.2d at 247.

Unlike the corporation in *Rosen,* the Willis partnership was not a profitable enterprise. It consistently operated at a loss. The executor's use of the tables, if allowed, would create an income value from assets that have never shown any capacity to produce income for the trust. Use of the tables under these circumstances would convert a portion of the future interest into a present interest by a simple computation. This legerdemain would surely transgress the statutory ban on the exclusion of future interests.

Accordingly, we conclude that Mrs. Willis' gift did not create a present interest that qualified for exclusion from the gift tax. We also conclude that even if a present interest were created by the bare language of the trust agreement, the executor's inability to prove the probability of income forecloses reliance on the actuarial tables.

AFFIRMED.

K. K. HALL, Circuit Judge, dissenting:

I respectfully dissent. The only issue in this appeal is whether a gift of the present right to receive all income produced from valuable trust property, which historically has produced no income, can qualify the donor taxpayer for a per donee gift tax exclusion under I.R.C. § 2503(b), 26 U.S.C. § 2503(b) (1976). The majority holds it does not, absent some undefined proof by taxpayer that money will flow to the donees in the future, where none would have flowed in the past.

This holding is contrary to the rule of *Rosen v. Commissioner,* 397 F.2d 245 (4th

Cir. 1968), where we held that a bona fide right of income from valuable property qualifies for the exclusion regardless of its past earnings. Here, the right is given, the underlying asset is very valuable and we should apply the actuarial value set forth in the Commissioner's tables. 26 CFR § 25.-2512–9.[1]

The gift here of family-controlled assets is similar to the gift of dividends in a family-controlled corporation which we considered in *Rosen*. There, no dividends had ever been voted, and the corporation's income was accumulated for investment by the family directors, to increase the value of its stock. As in the case of the proverbial "ugly widow" who "everybody knows" will never remarry, the Commissioner argued that no dividend would ever be voted in the future since the corporation would continue to be family-controlled and ever directed toward the investment rather than distribution of income.

In this case the trust asset is valuable real property which steadily appreciates in value each year it is held without sale. It is valuable for multiple dwelling residential development; however, at the time of the gift, it was used as a family rental estate and farming operation which together did not produce enough income to meet expenses. The property produced income year after year, unlike in *Rosen,* but it never produced a distributable profit. If the business use of the property by the trustees were to change, its profit potential would change. If a higher yielding asset were substituted for the real property, the income potential would change.

*Rosen* teaches that we should not second-guess how trustees will elect to manage valuable trust assets, nor should we attempt to predict the future income of those assets on a case-by-case basis. Instead, we should turn to the actuarial valuation tables promulgated by the Commissioner.

These tables are structured to set a present worth on rights of income, the amount of which will be determined in the future. The tables index these present rights to the fair market sale value of the assets rather than to their profit histories. Implicit in such an approach is that the present value of all gifts of income should be set by the use and value of the asset to any willing purchaser. Such a theoretical user would put it to its most valuable *potential* use in the marketplace.

Despite the "bright line" of this policy, the Commissioner asks us to reject it in this case. As in *Rosen,* the Commissioner argues that the value of the donee's gift as a whole is the gift of corpus, not the income from it. And since "everybody knows" the trustees will never decide to change the *use* or *kind* of trust assets to create income, we should consider the negative profit history of the asset as the "true" measure of its present worth—not its vast income potential. This analysis assumes that the present income-producing worth of the underlying asset will never change, either with changing economic conditions or from any decision of the trustees to change the asset's present use or to exchange it for one with a higher yield. *Rosen* rejected such an approach, the policy of the tables reject it, and we should reject it.

Of course, under the *Rosen* analysis, our rejection of such argument by the Commissioner does not end the case since *Rosen* allows an exception for "extraordinary circumstances," where the tables are not applicable. 397 F.2d at 248. This exception was not explained. Contrary to the majority's broad-ranging analytical undertaking, I think only in "extraordinary circumstances" can we hold the tables inapplicable—if we are to follow *Rosen.*

Because he seeks an exception to the *Rosen* rule, the Commissioner bears the bur-

---

1. The tables apply where "the interest to be valued is the *right to receive income of property or to use nonincome-producing property.*" (Emphasis added) § 25.2512–9(c). Here, the Commissioner's argument turns on a technicality since the legal basis of the gift was only a right of trust income in a partnership which owned the real estate. If the beneficiaries had been given a right of personal possession, the tables would apply by the express terms of the regulations.

den of persuasion on the issue. On the facts before us, I think the Commissioner has not carried it because neither the restrictions of the trust nor the relationship of the trustees and beneficiaries to the trust assets are so "extraordinary" that we can hold there is absolutely *no potential for distributable income* by the trust.

Therefore, just as I would give the proverbial widow credit for her inherent value to all possible suitors, I would reverse the district court to allow the gift tax exclusion.