Estate of W. W. Fondren, Deceased, Ella F. Fondren, Independent Executrix, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Ella F. Fondren, Petitioner *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 107473, 107474.   Promulgated May 4, 1943.

*William M. Cleaves, Esq.*, for the petitioners.
*Wilford H. Payne, Esq.*, for the respondent.

#### OPINION.

Arnold, *Judge:* These proceedings, consolidated for decision, involve gift tax deficiencies for 1937 of $8,400 each.   The sole issue is whether gifts in trust were gifts of future interests, thereby prohibiting any $5,000 exclusion.   The cases were submitted upon stipulated facts and exhibits.   The stipulated facts are adopted as our findings of fact and the material portions are hereinafter set forth.

During the taxable year, and prior and subsequent thereto, Ella F. Fondren and W. W. Fondren were husband and wife, residing and domiciled in Texas.   W. W. Fondren died testate January 5, 1939.   Ella F. Fondren is the duly appointed executrix of his estate, with offices in Houston, Texas.   The gift tax returns of husband and wife were filed with the collector of internal revenue for the first district of Texas.

On December 17, 1935, W. W. Fondren and Ella F. Fondren executed a separate trust instrument in favor of each of their five grandchildren, namely, Ellanor Anne Fondren, Mary Doris Fondren, Peter Fondren Underwood, Wash Bryan Trammell, Jr., and Sue Fondren Trammell.   At that time the eldest grandchild was less than six years of age.   On December 7, 1936, decedent and his wife executed a trust instrument in favor of a sixth grandchild, Walter William Fondren III, born April 29, 1936.   On December 2, 1937, they executed a

seventh trust instrument in favor of David Milton Underwood, a grandchild born March 5, 1937. The provisions of the various trust instruments were substantially the same, so that the specific provisions of the trust instrument hereinafter set forth are illustrative of the provisions of each indenture. The principal variation in the trust provisions were with respect to the successor beneficiaries in the event of the death of the principal beneficiary, all of whom were living when this proceeding was heard.

Each trust instrument constituted W. W. Fondren, trustee, and upon his death or resignation Ella F. Fondren was to succeed to the trusteeship. Each trust instrument expressly provided that W. W. Fondren and/or Ella F. Fondren might transfer, assign, and deliver additional property to the trustee for the benefit of the particular beneficiary. Upon the death of W. W. Fondren on January 5, 1939, Ella F. Fondren succeeded to the trusteeship and has since administered each trust as trustee.

The trustee was given full power and authority with respect to the management, control and handling of the trust property. He could sell, mortgage, pledge, encumber or otherwise dispose of the same, and invest, reinvest, and keep invested all proceeds from earnings or sales so as to make the trust estate earn the best income consistent with safety of investment and sound business principles. Sales could be made in lots, parcels, or the entirety for such price and purposes and under such terms and conditions as in the trustee's judgment was for the best interests of the trust estate. The trustee could institute, prosecute, maintain, and defend any suits, actions, or legal proceedings necessary in his judgment for the protection or enforcement of the interests of the trust estate. He could employ at the expense of the trust estate such accountants, agents, and attorneys as in his judgment were for the best interests of the trust estate. The exercise of any power conferred on the trustee was not to exhaust the power, but said power could be exercised as often as and whenever in the judgment of the trustee such exercise thereof was necessary or advisable for the best interests of the trust estate.

Article three of the trust instruments reads in part as follows:

ARTICLE THREE

Out of the trust estate hereby created and as the same may hereafter be augmented and increased by gift from the Grantors, by either of them as herein provided for, or from any other source whatsoever, the Trustee shall provide for the support, maintenance and education of our said Grandson, [or Granddaughter as the case may be] using only the income of said estate for that purpose if it be sufficient. If it be necessary to use any of the corpus of the estate for that purpose and in the judgment of the Trustee it is best to do so, said Trustee may make advancements out of the corpus of said trust estate for such purpose for the benefit of our said Grandson.

It is contemplated, however, that our said Grandson will have other adequate and sufficient means of support, and that it will not be necessary to use either the income or the corpus of the trust estate hereby created to properly provide for his education, maintenance and support; and, if the income from the trust estate be not needed for these purposes, then all of the income from said trust estate not so needed shall be by the Trustee passed to capital account of said trust estate, and shall be and become a part of said trust estate; it being our hope that all of the earnings and income of said trust estate during the period of this Trust may be used to augment the trust estate and be delivered to our said Grandson at the periods herein provided for. It is expressly provided, however, that our said Grandson shall be properly maintained, educated and supported, and if it be necessary to use all of the income and even all of the corpus of the trust estate hereby created and all augmentations thereof, it shall be the duty of the Trustee to see that this obligation shall be properly and reasonably discharged.

    \*        \*        \*        \*        \*        \*        \*

The trusts were to continue until each grandchild attained the age of 35, but 25 percent of the corpus and accumulations, if any, were to be delivered to the grandchild when he or she attained the age of 25, 33⅓ percent when he or she attained age 30, and the remainder when he or she attained age 35. If the beneficiary died leaving issue before termination of the trust, the trust estate was to be held and administered for the benefit of the issue and delivered share and share alike when the youngest of such issue attained age 21. If the beneficiary died without issue before termination of the trust, successor beneficiaries were provided for by the trust instruments, or the trust estate descended to the heirs under the laws of the State of Texas.

The stated purpose in creating the trust was "to provide for the personal comfort, support, maintenance and welfare of" each grandchild. The trust fund was not to be liable for obligations of the beneficiary. The beneficiary could not anticipate his or her interest in the trust fund, and the fund could not be reached by judgment creditors or others having claim against any beneficiary. Other provisions common to trust indentures were included in the instruments, but such provisions are not deemed pertinent to the issue and are not set forth.

The trusts were absolute and irrevocable, with no interest in the estate or the benefits accruing therefrom received or retained by the grantors. The grantors reserved the right, however, to remove any acting trustee, except W. W. Fondren, and to name and appoint a successor trustee with the same rights, powers, and authority as the first trustee, a right which was also reserved to the survivor of the grantors.

On or about December 2, 1937, W. W. Fondren and Ella F. Fondren each gave to the trustee for each of the seven trusts aforementioned 100 shares of Humble Oil & Refining Co. stock. The gifts to the trust for David Milton Underwood were the first gifts to this

trust. The gifts to the other trusts, were in augmentation of the trust estates theretofore existing. The fair market value of the Humble Oil & Refining Co. stock on December 2, 1937, was $59.75 per share.

On their gift tax returns for 1937 W. W. Fondren and Ella. F. Fondren each claimed the statutory exclusion of $5,000 and each reported a taxable gift to each of said trusts of $975. Each paid gift taxes on the basis of the taxable gifts so reported.

In addition to the seven gifts in trust for the benefit of their grandchildren, W. W. Fondren and Ella F. Fondren each made direct gifts of Humble Oil & Refining Co. stock during 1937 to their three children as follows: Walter W. Fondren, Jr., 100 shares; Catherine Fondren Underwood, 100 shares; and Susie Fondren Trammell, 100 shares. At the date of each of said gifts the fair market value of said stock was $59.75 per share. In their gift tax returns W. W. Fondren and Ella F. Fondren each claimed a $5,000 exclusion with respect to each gift to their children, or a total exclusion for each of $15,000.

At all times subsequent to the creation of the aforementioned trusts. the parents of the beneficiaries named therein have adequately and sufficiently provided for the proper and adequate support, maintenance, and education of their children, with the result that no part of the trust income or corpus has been distributed, used, or applied to or for the benefit, support, maintenance, or education of any one of said beneficiaries.

In determining the deficiencies involved herein respondent allowed W. W. Fondren and Ella F. Fondren three $5,000 exclusions each with respect to the direct gifts made during 1937 to their children and disallowed to each seven $5,000 exclusions because of the gifts in trust for the benefit of their grandchildren. The disallowance in each instance was based upon respondent's determination that the gifts in trust constituted gifts of future interest in property against which no exclusions are allowable.

The gifts in trust made by W. W. Fondren and Ella F. Fondren for the benefit of their grandchildren in 1937 were gifts of future interests in property as to which no $5,000 exclusions are allowable in determining their gift tax liability for 1937.

Section 504 (b) of the Revenue Act of 1932 provides that the first $5,000 of gifts made to any person by the donor (other than gifts of future interests in property) shall not be included in the total amount of gifts made during such year. "Future interests" under article 11 of Regulations 79 (1936 Ed.) include "reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession or enjoyment at some future date or time." This regulation has been considered and approved by

the courts in a number of cases, *United States* v. *Pelzer*, 312 U. S. 399; *Ryerson* v. *United States*, 312 U. S. 405; *Helvering* v. *Hutchings*, 312 U. S. 393; *Mary M. Hutchings*, 1 T. C. 692, and cases cited therein.

The courts have decided numerous cases involving gifts in trust where the character of the gift, i. e., present or future, depended upon the amount of discretion lodged in the trustee to make distributions of trust income or corpus to the trust beneficiaries. Cf. *Smith* v. *Commissioner* (C. C. A., 8th Cir.), 131 Fed. (2d) 254, with *Welch* v. *Paine* (C. C. A. 1st Cir.), 130 Fed. (2d) 990. The latter case stated the rule, based on authorities therein cited, to be that if the right of the beneficiary to the use, possession, and enjoyment of the trust income or corpus is subject to the discretion of the trustee, the gift is a gift of a future and not a present interest. To the same effect is our decision in *Winston Paul*, 46 B. T. A. 920, where the net income of the trust was distributable "in such proportion as the trustee may in his absolute discretion determine"; in *Lillian Seeligson Winterbotham*, 46 B. T. A. 972, where the net income was distributable in such proportions as to the trustees "shall seem fit and proper  *  *  * (such portion to be determined solely in the judgment and discretion of the said Trustees, and without any control over them in the exercise of such judgment or discretion)  *  *  *"; and in *Mary M. Hutchings*, *supra*, where income could be accumulated or distributed in the "sole and absolute discretion" of the trustees. In each of these cases we held that the discretion lodged in the trustee so postponed the use, possession, and enjoyment of the income or corpus by the beneficiary that the gift was a gift of a future and not a present interest.

We think the situation here with respect to the discretion lodged in the trustee is much the same. While the draftsman of the several trust instruments failed to use the word "discretion" in describing the power and authority lodged in the trustee, such phrases as "in the judgment of the Trustee," "for the best interests of said trust estate," and "if it be necessary," which recur frequently in each instrument, adequately vest the trustee with discretionary power and authority. It was the express duty of the trustee to see that the grandchildren were properly maintained, educated, and supported. In the discharge of that duty he could use trust income first and, if it be necessary, all the corpus. Performance of this duty required the exercise of discretion, whether so called in the trust instrument or not.

Furthermore, the grantors definitely contemplated that neither income nor corpus would be needed for the maintenance, support, and education of the grandchildren. It is stipulated that the parents of the grandchildren provided adequately for each and all of said children. It is apparent from this fact, and from the several trust instruments themselves, that the dominant purpose of the grantors was not so much the present giving to their grandchildren as it was the crea-

tion of a trust estate which would be partially distributed if, when, and as they attained the ages of 25, 30, and 35, respectively. Each trust instrument stated specifically that the grantors contemplated that the beneficiary named therein "will have other adequate and sufficient means of support," so that it would not be necessary to use net income or corpus, but income could be accumulated and added to corpus. The earnest hope was expressed that all earnings and income of the trust estate would be used to augment the trust estate and later distributed as a part of corpus. The trust income and corpus was a reserve which would provide for the grandchildren if necessary. The intent of the grantors, coupled with the legal obligation imposed on parents to support their children, leads us to the conclusion that the effect of the instruments was to postpone the gifts until the grandchildren achieved specified ages. Obviously, the right to possession, use, and enjoyment of the trust corpus was dependent upon survivorship. If so dependent, the gift is a gift of future interest. *Fisher v. Commissioner* (C. C. A., 9th Cir.), 132 Fed. (2d) 383.

*Decision will be entered for the respondent.*