WILLIAM J. RUSHTON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF ELIZABETH P. RUSHTON, DECEASED, WILLIAM J. RUSHTON III AND JAMES RUSHTON, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7770–70, 7771–70. Filed May 22, 1973.

*Lee C. Bradley, Jr., Charlotte L. Railey,* and *William L. Hinds, Jr.,* for the petitioners.

*J. Leon Fetzer,* for the respondent.

GOFFE, *Judge:* Respondent determined the following deficiencies in Federal gift tax:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 7770–70 | William J. Rushton | 1966 | $984.37 |
| 7770–70 | William J. Rushton | 1967 | 893.25 |
| 7771–70 | Elizabeth P. Rushton [1] | 1966 | 984.38 |
| 7771–70 | Elizabeth P. Rushton [1] | 1967 | 866.25 |

[1] Petitioner Elizabeth P. Rushton died subsequent to the trial of the case and the executors of her estate were substituted as petitioners.

Petitioner in docket No. 7770–70 claims an overpayment of tax for the taxable year 1966 in the amount of $76.76 and petitioners in docket No. 7771–70 claim an overpayment of tax for the taxable year 1966 in the amount of $58.32.

Upon joint motion of all the parties, these cases were consolidated for trial, briefs, and opinion.

The sole issue for decision is the valuation for Federal gift tax purposes of shares of common stock of Protective Life Insurance Co. on four dates in 1966 and 1967.

### FINDINGS OF FACT

All of the facts and exhibits stipulated by the parties are incorporated in our findings of fact.

William J. Rushton and Elizabeth P. Rushton were husband and wife residing in Birmingham, Ala., in 1966 and 1967. They filed Federal gift tax returns for those years with the district director of internal revenue at Birmingham, Ala. Petitioner Elizabeth P. Rushton died on February 25, 1972, and letters testamentary were issued to William J. Rushton III and James Rushton. They were, therefore, as executors of her estate, substituted as parties in docket No. 7771–70.

William J. Rushton made gifts to the following donees in the taxable years 1966 and 1967 consisting solely of shares of common stock of Protective Life Insurance Co.:

| Donee | Number of shares | Donee | Number of shares |
|---|---|---|---|
| *Jan. 3, 1966* | | *Jan. 3, 1967* | |
| Elizabeth P. Rushton | 237 | Elizabeth P. Rushton | 400 |
| William J. Rushton III | 237 | William J. Rushton III | 1800 |
| James Rushton | 237 | James Rushton | 3000 |
| William J. Rushton IV Trust | 237 | William J. Rushton IV Trust | 400 |
| Deakins F. Rushton Trust | 237 | Deakins F. Rushton Trust | 400 |
| Tunstall P. Rushton Trust | 237 | Tunstall P. Rushton Trust | 400 |
| Total | 1422 | Total | 6400 |
| *June 15, 1966* | | *Apr. 7, 1967* | |
| William J. Rushton III | 2500 | William J. Rushton III | 1250 |
| James Rushton | 2500 | James Rushton | 750 |
| Total | 5000 | Total | 2000 |

Elizabeth P. Rushton consented to have one-half of the gifts made by Mr. Rushton to third parties considered as having been made by her and she reported one-half of such gifts on her returns for 1966 and 1967.

The following table reflects the values of the shares reported by petitioners on their returns, the values determined by respondent in

his statutory notices of deficiency, and the values claimed by petitioners in their petitions:

| Date of gift | Value on tax return | Value in notice of deficiency | Value in petitions |
|---|---|---|---|
| Jan. 3, 1966 | $25.25 | $25.25 | $24.625 |
| June 15, 1966 | 17.75 | 19.50 | 17.75 |
| Jan. 3, 1967 | 14.25 | 15.60 | 14.25 |
| Apr. 7, 1967 | 15.50 | 15.75 | 15.50 |

The values determined by respondent represented the mean between the bid and asked prices published by the National Association of Securities Dealers (NASD) in Birmingham, Ala., newspapers (the Birmingham Post-Herald and the Birmingham News) except those determined for January 3, 1966, and January 3, 1967. The means between the published bid and asked prices on those dates were $25.125 and $15.5625, respectively.

Protective Life Insurance Co. (Protective Life) was chartered under the laws of the State of Alabama in 1907 and has its home office in Birmingham, Ala. It is engaged in the business of writing ordinary individual and group life insurance policies, group accident, health and hospitalization insurance, and it also issues annuities. During the years involved herein it was licensed to do business in 14 States and the District of Columbia and was ranked by Alfred M. Best Co., Inc., in its Life Insurance Reports as among the 55 largest stock life insurance companies in the nation from the standpoint of assets and business in force.

Petitioner William J. Rushton was president of Protective Life for 30 years until April 13, 1967, when he became chairman of the board of directors, a position he continues to hold.

In 1966 and 1967 Protective Life had outstanding 3,300,000 shares of common stock and on December 1, 1967, approximately 74 percent of the stockholders resided in Alabama and they owned approximately 77 percent of the outstanding shares. Petitioner William J. Rushton owned 204,067 shares in February 1966 and 192,929 shares in February 1967. One-third of the outstanding shares were owned by stockholders residing in the Birmingham area each of whom owned 10,000 or more shares and their stock was generally not available for trading.

Protective Life stock is not traded on an exchange and is traded primarily over-the-counter in Birmingham although some dealers in New York City and Nashville, Tenn., trade in the stock.

The broker which handled substantially more of the market in Birmingham and was probably the principal market maker in Protective Life stock was Sterne, Agee & Leach, Inc. (Sterne, Agee), and had continuously made a market in such stock for over 40 years.

The prices at which Protective Life stock is sold are not published. The bid and asked prices are published in the Birmingham Post-Herald and the Birmingham News newspapers by the local members of NASD and the bid and asked prices represent prices for 100 shares as of 10:30 a.m. by the dealers in Birmingham who quote bid and asked prices in the stocks reflected in the newspapers.

### ULTIMATE FINDINGS OF FACT

The fair market values per share of common stock of Protective Life Insurance Co. were as follows on the dates indicated:

| | |
|---|---|
| Jan. 3, 1966 | $25. 25 |
| June 15, 1966 | 19. 50 |
| Jan. 3, 1967 | 15. 60 |
| Apr. 7, 1967 | 15. 75 |

### OPINION

The sole issue is the valuation of shares of common stock in Protective Life Insurance Co. transferred as gifts from petitioners to various donees on four dates in 1966 and 1967. The value of each gift determines the amount of each gift under section 2512 [1] to which the appropriate exclusions, exemptions, deductions, and gift tax rates apply.

The valuation of property transferred as a gift is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of relevant facts. Sec. 25.2512-1, Gift Tax Regs. Stocks are valued at the fair market value on the date of the gift. Sec. 25.2512-2(a), Gift Tax Regs. If there is a market for the stocks, including an over-the-counter market, the mean between the highest and lowest quoted selling price on the date of the gift is the fair market value per share. Sec. 25.2512-2(b), Gift Tax Regs. If there are no actual sales during a reasonable period beginning before and ending after the date of the gift, the fair market value may be determined by taking the mean between the bona fide bid and asked prices on the date of the gift. Sec. 25.2512-2(c), Gift Tax Regs.

Respondent, in his notices of deficiency, did not rely on actual sales of the stock although some sales occurred on the dates of the gifts. Instead, he determined the values primarily on bid and asked prices published in the Birmingham newspapers. Petitioners have made no argument that selling prices have any bearing on the fair market values. We will, therefore, limit our opinion to bid and asked prices.

[1] All references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

Petitioners, relying on section 25.2512–2(e), Gift Tax Regs., contend that the so-called blockage principle applies to discount the value below the mean between the bid and asked prices on the dates of the gifts. The specific language of the regulations relied upon is as follows:

In certain exceptional cases, the size of the block of securities made the subject of each separate gift in relation to the number of shares changing hands in sales may be relevant in determining whether selling prices reflect the fair market value of the block of stock to be valued. If the donor can show that the block of stock to be valued, with reference to each separate gift, is so large in relation to the actual sales on the existing market that it could not be liquidated in a reasonable time without depressing the market, the price at which the block could be sold as such outside the usual market, as through an underwriter, may be a more accurate indication of value than market quotations. * * * [Sec. 25.2512–2(e), Gift Tax Regs.]

The parties disagree on two points. Petitioners contend that the blockage discount must be applied to all the gifts of Protective Life stock transferred as gifts on each of the valuation dates. Respondent contends that blockage, if applicable, must be applied to the number of shares of each separate gift on each valuation date. The other point of disagreement is whether any blockage discount is appropriate.

Although petitioners do not ask us to hold the above-quoted section of the regulations invalid, we would, in effect, be doing so if we adopt petitioners' position. The plain language of the regulations unmistakably requires that blockage, if appropriate, applies to each gift separately. We are not persuaded by petitioners' argument that the rule should be other than that stated in the regulations and we have consistently held to such position. *Sewell L. Avery*, 3 T.C. 963, 971 (1944) ; *Robert L. Clause*, 5 T.C. 647, 650 (1945), affirmed per curiam 154 F. 2d 655 (C.A. 3, 1946) ; *Thomas A. Standish*, 8 T.C. 1204, 1209 (1947). In *Lawrence C. Phipps*, 43 B.T.A. 1010 (1941), affd. 127 F. 2d 214 (C.A. 10, 1942), certiorari denied 317 U.S. 645 (1942), the taxpayer transferred as gifts 10,000 shares of stock in one corporation to 13 donees in varying amounts on the same day. Petitioner, in that case, asked us to take the identical position that petitioners herein request, that the total 10,000 shares be considered as one block for purposes of applying the blockage discount theory. In rejecting petitioner's theory we stated as follows:

Petitioner's premise and theory have the effect, in our opinion, of asking us to substitute a different property for the property which was in fact the property in each gift. It might be that the value of a block of 10,000 shares is the same as the aggregate of the values of each of the 13 gifts, but the standard adopted in the statute requires that the value of the property given shall be considered the amount of the gift, and we understand this to mean that *each gift* is to be valued. [43 B.T.A. at 1022.]

Petitioners ask us to depart from the regulations and our rule of long standing by reason of three opinions, namely, *Helvering* v. *Kimberly*, 97 F. 2d 433 (C.A. 4, 1938), affirming per curiam a Memorandum Opinion of this Court; *Page* v. *Howell*, 116 F. 2d 158 (C.A. 5, 1940) ; and *Maytag* v. *Commissioner*, 187 F. 2d 962 (C.A. 10, 1951).

In *Helvering* v. *Kimberly*, *supra*, the taxpayer made gifts of stock of two corporations to three donees all on the same date. At the trial the Commissioner, whose regulations at that time did not recognize blockage, argued that no blockage applied. The taxpayer produced expert witnesses who gave their opinion that if the aggregate number of shares transferred by gift on the valuation date were placed on the market at one time the value would be lower than the mean between prices on the New York Stock Exchange for that date. The taxpayer prevailed before the Board and on appeal the Commissioner's argument was rejected as follows:

The Commissioner now makes the point, seemingly as an afterthought, that the evidence of the witnesses should not have been accepted because they fixed their estimates of value of the Kimberly stock with reference to a block of 30,000 shares instead of three blocks of 10,000 shares each, and their estimates of value of the International stock with reference to a block of 18,000 shares instead of three blocks of 6,000 shares each. In so doing they merely followed the method of the Commissioner who valued the gifts as a whole and not separately. No objection on this score was made at the hearing before the Board. It is difficult to believe that the sale of three blocks of 10,000 shares each would have had a different effect from a sale of one block of 30,000 shares, and there is no reason to believe that the estimates of the experts would have been different if their attention had been specifically called to the point. [97 F. 2d at 434.]

The Circuit Court of Appeals, in reviewing a case in which new matter was argued on appeal, merely concluded that it did not believe the testimony of the expert witnesses would be different if the Commissioner had made his argument in the trial of the case. We do not read the per curiam opinion as laying down a rule for trial courts to follow that the entire block of stock must be considered.

*Page* v. *Howell*, *supra*, was an appeal to the Circuit Court of Appeals for the Fifth Circuit from a jury trial. An appeal in the instant case would go to the same court. We find nothing in the opinion of the Circuit Court of Appeals to indicate that any argument was made that each gift should be valued separately. Unlike *Helvering* v. *Kimberly*, *supra*, where such argument was first made on appeal, such argument was never made and the sole issue presented to the jury and argued on appeal was whether blockage had any application in that case. If the opinion in that case can be interpreted to mean that the argument of blockage discount in valuation of separate gifts was involved, such argument involved a question of law not a question of fact and should not have been submitted to the jury. *Peterson* v. *United States*, 344 F. 2d 419 (C.A. 5, 1965).

*Maytag* v. *Commissioner*, *supra*, was an appeal to the Court of Ap-

peals for the Tenth Circuit from a Memorandum Opinion of this Court. We held that each of the gifts must be valued separately for the purpose of computing the gift tax. The Court of Appeals affirmed, holding that there was nothing in the record to indicate that the Tax Court did not weigh as one factor the effect on the market of all the gifts made on each valuation date. From the language of the opinion of the Court of Appeals, petitioners herein argue that the proper test is the impact on the market of all the shares transferred on one valuation date. This distorts the language of the Court of. Appeals, which said—

At the same time, we are equally clear in the belief that in a case of this kind where a donor makes gifts of corporate stock the effect of placing on the market all of the stock constituting the several gifts is a factor to be taken into consideration along with other factors in determining the fair market value of the stock constituting each gift. In other words, in fixing the value of the stock constituting each gift separately, one factor to be taken into consideration is whether and to what extent, if any, placing on the market the stock constituting all of the gifts would overtax the market and depress the price below current quotations. That factor is not necessarily determinative or decisive. But it is entitled to appropriate consideration along with all other factors in fixing separately the fair market value of the stock constituting each gift. * * * [187 F. 2d at 965.]

Clearly the Court of Appeals intended the test set forth above to be only one factor. With all due respect we do not conclude that it should have even such a limited application. We have consistently valued each gift separately and are not persuaded that injecting another factor of doubtful usefulness would do more than make the determination of fair market value even more vague and uncertain. It is illogical to determine the value of each gift separately and yet take into account the effect of all the gifts of shares upon the market. The two concepts are irreconcilable. Accordingly, we decline to follow the Court of Appeals for the Tenth Circuit in *Maytag*.

Our position on the valuation of separate gifts was adopted by the U.S. District Court for the Southern District of Florida in *Phillips* v. *Tomlinson*, an unreported case (S.D. Fla. 1962, 10 A.F.T.R. 2d 6227, 62–2 U.S.T.C. par. 12,093). The court in that case carefully considered *Maytag* v. *Commissioner*, *supra*, and held it to be distinguishable without further comment.

*Maytag* v. *Commissioner*, *supra*, has also been criticized by one authority as having confused the application of the blockage discount theory to gift taxes.[2]

Petitioners offered no evidence of the impact on the market of each separate gift of stock. Petitioners' expert witness, Rucker Agee, expressed an opinion as to the impact on the market of all shares transferred on each date.

---

[2] Lowndes & Kramer, Federal Estate and Gift Taxes 458 (2d ed. 1962).

Petitioners rely on the blockage theory. Blockage is not a law of economics, a principle of law, or a rule of evidence. If the value of a given number of shares is influenced by the size of the block, this is a matter of evidence and not of doctrinaire assumption. *Safe Deposit & Trust Co. of Baltimore, Executor*, 35 B.T.A. 259, 263 (1937), affd. 95 F. 2d 806 (C.A. 4, 1938) ; *Estate of Robert Hosken Damon*, 49 T.C. 108, 117 (1967).

Petitioners are in precisely the same position as petitioner was in *Lawrence C. Phipps, supra.* They have argued that we should apply blockage to the aggregate of the gifts on each valuation date and have introduced testimony to support their position but have produced no evidence for applying blockage to each separate gift. It would be mere speculation on our part to attempt to apply blockage to each gift and this we refuse to do.

The burden of proof herein is on petitioners and they have failed to sustain that burden.

Petitioners argue that the bid and asked prices quoted in the Birmingham newspapers, because they are the prices as of 10:30 a.m., are not as good evidence of value as the prices quoted by Sterne, Agee on the valuation dates. The bid and asked prices quoted in the newspapers were primarily used by respondent in making the determinations for his statutory notices of deficiency. It is not a question of which is better evidence. The prices used by the Commissioner in his statutory notice of deficiency are presumed to be correct and the burden of proof is on petitioner to show they are not correct. As explained above, petitioners have failed to make such a showing.

Petitioners also contend that the quotations of Sterne, Agee should be accepted as representative of the prices on January 3, 1967, instead of the prices published in the Birmingham newspapers. Petitioners have failed to prove this as explained above because Sterne, Agee was only one of the dealers in Protective Life stock. Petitioners have failed to overcome the presumptive correctness of the Commissioner's determinations.

Reviewed by the Court.

*Decisions will be entered for the respondent.*