LOUISA J. CALDER, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 28344–82.    Filed November 6, 1985.

*Edward L. Sadowsky* and *S. Sidney Mandel,* for the petitioner.

*Michael Menillo,* for the respondent.

KÖRNER, *Judge*: Respondent determined a Federal gift tax deficiency against Louisa J. Calder (hereinafter petitioner) for the taxable quarter ending December 31, 1976, in the amount of $459,418.60.

The issues for decision are: (1) Whether petitioner's transfers on December 21, 1976, to four trusts, involving six beneficiaries, constituted four or six separate gifts; (2) whether

a blockage discount should be applied in valuing petitioner's gifts and, if so, should it be applied to each gift, separately, or applied on an aggregate basis, and in what amounts; and (3) whether petitioner is entitled to a $3,000 exclusion under section 2503,[1] for each of these gifts.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

At the time of filing her petition herein, petitioner was a resident of Roxbury, Connecticut. Petitioner filed a Federal gift tax return for the calendar quarter ending December 31, 1976, with the Internal Revenue Service at Philadelphia, Pennsylvania.

Petitioner is the widow of Alexander Calder, a well-known artist, who died on November 11, 1976. The Estate of Alexander Calder distributed approximately 1,226 gouaches[2] to petitioner. The 1,226 gouaches were included as part of 1,292 gouaches listed by the executors of the Estate of Alexander Calder on its Federal estate tax return filed February 13, 1978. The 1,292 gouaches were reported on the estate tax return as having a fair market value of $949,750, or an average value per gouache of $735. Respondent's appraiser, Karen Carolan, in her valuation report, estimated that the average value per gouache ranged from $2,250 to $2,500, resulting in a total value ranging from $2,907,000 to $3,230,000 for the 1,292 gouaches in the estate. She further determined that because of the large number of gouaches, a "blockage" discount of about 60 percent was in order. This resulted in a net fair value ranging from $1,164,600 to $1,293,800. Respondent concluded that the $949,750 claimed on the estate tax return was within an acceptable range and no change was recommended.

On December 21, 1976, petitioner created four irrevocable trusts, one each for the benefit of her daughters, Sandra Calder Davidson (the Davidson Trust) and Mary Calder Rower

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

[2] As used in this opinion the term "gouache" refers to a form of original painting executed with opaque water colors. See The Random House College Dictionary (rev. ed. 1982).

(the Rower Trust), one for the benefit of her grandchildren, Shawn and Andrea Davidson (the Davidson Children Trust), and one for the benefit of her other grandchildren, Alexander and Holton Rower (the Rower Children Trust). The two trust indentures creating the Davidson and the Rower Trusts were identical except for the designation of the person who was to constitute the beneficiary of each trust. The relevant provisions of one of the trust indentures are as follows:

THIS INDENTURE or DEED OF TRUST, made this 21st day of December, 1976, BY and BETWEEN LOUISA J. CALDER, residing at Sache 27190, Republic of France, party of the first part (hereinafter referred to as the Grantor) and ROBERT S. FRIEDMAN, of 261 Madison Avenue, New York, New York and STANLEY COHEN, of 44 Avenue des Champs-Elysees 75008 Paris, France, parties of the second part (hereinafter referred to as the Trustees), WITNESSETH:

\* \* \* \* \* \* \*

FIRST: A. The Trustees shall hold, invest and reinvest the Trust Estate for and during the lifetime of the Grantor's daughter, SANDRA CALDER DAVIDSON, and shall collect and receive the interest, dividends, issues and income of the Trust Estate and after paying therefrom all necessary and property [sic] charges and expenses, the Trustees shall pay over the net income to the Grantor's daughter, SANDRA CALDER DAVIDSON, in periodic installments for and during the term of her natural life.

The two trust indentures creating the Davidson Children and the Rower Children Trusts were identical except for the designation of the persons who were to constitute the beneficiaries of each trust. The relevant provisions of one of the trust indentures are as follows:

THIS INDENTURE or DEED OF TRUST, made this 21st day of December, 1976 BY and BETWEEN LOUISA J. CALDER, residing in Sache 37190, Republic of France, party of the first part (hereinafter referred to as the Grantor) and ROBERT S. FRIEDMAN, of 261 Madison Avenue, New York, New York and STANLEY COHEN, 44 Avenue des Champs-Elysees 75008 Paris, France, parties of the second part (hereinafter referred to as the Trustees), WITNESSETH:

\* \* \* \* \* \* \*

FIRST: A. The Trustees shall divide the Trust Estate into two equal parts, and shall hold, invest and reinvest such parts as separate trust funds, subject to the terms hereof, for the respective lifetimes of SHAWN DAVIDSON and ANDREA DAVIDSON (the "beneficiaries") and shall collect and receive the

interest, dividends, issues and income of the Trust Estate and after paying therefrom all necessary and proper charges and expenses, the Trustees shall pay over the net income in equal shares to the beneficiaries or to their issue, as hereinafter provided, in periodic installments for and during the term of their respective lives.

The relevant provisions common to all four trusts are as follows:

Anything hereinabove contained to the contrary notwithstanding the trustees, in the exercise of their absolute and uncontrolled discretion, may at one time or from time to time pay over to either of the beneficiaries from the principal of the Trust Estate such a sum or sums, even to the extent of the whole thereof, as the Trustees may deem advisable for the welfare of the beneficiaries, and upon making any such payment or payments the Trustees shall be discharged from all further liability, responsibility or accountability with respect thereto.

\* \* \* \* \* \* \*

FIFTH: The Trustees shall have the following express powers exercisable in their sole and absolute discretion with respect to all property whether principal or income at any time coming into their hands, whether by purchase or in any other manner, and every power of the trustees shall continue with respect to any such property until the execution of every trust and every power in trust with respect thereto shall have been completed by the actual and final distribution thereof under the terms of this agreement.

A. To hold and continue to hold as an investment the property received hereunder, and any additional property which may be received by them, so long as they deem proper, whether or not income producing, deemed by them to be for the best interests of the trust and the beneficiaries hereunder, without being limited to trust or chancery investments provided by law, and notwithstanding that the same may constitute leaseholds, royalty interest [sic], patents, interests in mines, oil and gas wells, or timber lands, or other wasting assets, and without any responsibility for any depreciation or loss by or on account of such investments.

\* \* \* \* \* \* \*

C. To sell and convey any of the property of the trust or any interest therein, or to exchange the same for other property, whether or not such other property is income producing, for such price or prices and upon such terms as in their discretion and judgment may be deemed for the best interest of the trust and the beneficiaries hereunder, and to execute and deliver any deed or deeds (with or without warranty), receipts, releases, contracts or other instruments necessary in connection therewith.

\* \* \* \* \* \* \*

NINTH: The Grantor hereby declares that this agreement and all trusts and beneficial interests, whether vested or contingent, hereby created, shall be irrevocable and that the Grantor shall hereafter stand without power at any time to revoke, change or annul any of the provisions herein contained or any of the contingent or beneficial interests effected thereby, whether pursuant to a statute of the State of New York or decisions of its courts or otherwise.

TENTH: This agreement shall be governed by the laws of the State of New York and shall become effective upon its being executed by the Grantor and one Trustee. * * *

On the same day the trusts were created, December 21, 1976, petitioner executed the following transfers:

TABLE 1

| Trust title | Beneficiaries | Number of gouaches transferred | Reported fair market value on Schedule A of petitioner's gift tax return |
|---|---|---|---|
| Davidson Trust | Petitioner's daughter Sandra Calder Davidson | 306 | $237,437.50 |
| Davidson Children Trust | Petitioner's grandchildren Shawn and Adrea Davidson | 307 | 237,437.50 |
| Rower Trust | Petitioner's daughter Mary Calder Rower | 306 | 237,437.50 |
| Rower Children Trust | Petitioner's grandchildren Alexander and Holton Rower | 307 | 237,437.50 |
| | Total | 1,226 | 949,750.00 |

The parties have stipulated that the average retail value per gouache was $2,375 and that the value of the individual gouaches did not vary between the date of Alexander Calder's death, November 11, 1976, and the date of petitioner's gift, December 21, 1976. As table 1 indicates, petitioner reported the total value of the gifts on her gift tax return to be $949,750.[3] Petitioner estimated that because the fair market value of the gouaches did not vary between the date of the death and the date of the gift, the same blockage discount of 60 percent that was used for the estate tax return should be used for the gift tax return. Accordingly, the gouaches were claimed to have the same value for both gift and estate tax return purposes.

---

[3]Petitioner, in Schedule A of the gift tax return erroneously listed the 1,226 gouaches transferred to the four trusts as having an aggregate fair market value of $949,750, the same aggregate fair market value as reported for the 1,292 gouaches on the estate tax return, when in fact only the 1,226 gouaches were transferred.

Respondent, however, calculated that for gift tax purposes the blockage discount should be based on six separate transfers,[4] with the impact on the market of each transfer being considered independently. The blockage discount was calculated by respondent for each transfer as follows:

TABLE 2

| Transfer number | Number of gouaches in each transfer | ÷ | Estimated average number of gouaches sold per year[5] | = | Estimated approximate number of years required to sell off block |
|---|---|---|---|---|---|
| 1 (Davidson) | 306 | | 61 | | 5 |
| 2 (Rower) | 306 | | 61 | | 5 |
| 3 (Davidson child) | 154 | | 51 | | 3 |
| 4 (Davidson child) | 153 | | 51 | | 3 |
| 5 (Rower child) | 153 | | 51 | | 3 |
| 6 (Rower child) | 154 | | 51 | | 3 |
| Total | 1,226 | | | | |

| Transfer number | Present value factor at 10 percent[6] for annuities | × | Estimated average number of gouaches sold per year | × | Agreed average price per gouache | = | Determined value |
|---|---|---|---|---|---|---|---|
| 1 | 3.79078 | | 61 | | $2,375 | | $550,000 |
| 2 | 3.79078 | | 61 | | 2,375 | | 550,000 |
| 3 | 2.4868 | | 51 | | 2,375 | | 300,000 |
| 4 | 2.4868 | | 51 | | 2,375 | | 300,000 |
| 5 | 2.4868 | | 51 | | 2,375 | | 300,000 |
| 6 | 2.4868 | | 51 | | 2,375 | | 300,000 |
| Rounded total value of the transfers | | | | | | | 2,300,000 |

The net result or effect of respondent's approach was to grant petitioner a blockage discount of 25 percent with respect to transfers 1 and 2, and a discount of 18 percent with respect to transfers 3 through 6.[7]

---

[4]Respondent treated the transfers made to each beneficiary as separate gifts.

[5]This annual liquidation rate is not revealed in respondent's evidence, but is derived mathematically from his other computations.

[6]Sec. 25.2512-9, Gift Tax Regs., indicates that for transfers made after Dec. 31, 1970, and before Dec. 31, 1983 (as is the case here), the present value factor is based on a 6-percent factor. If applied here this would result in a higher capitalization factor and consequently a higher value for gift tax purposes. Respondent has inexplicably applied a 10-percent discount rate (the effective rate for transfers made after Nov. 30, 1983. Sec. 25.2512-5). Neither party contests this treatment.

[7]Thus: As to transfers 1 and 2:

306 gouaches × $2,375 (agreed retail value) = $726,750 (total retail value)
$550,000 (determined value) ÷ $726,750 = 0.75

As to transfers 3 through 6:

153/154 gouaches × $2,375 = $365,750
$300,000 (determined value) ÷ 365,750 = 0.82

Respondent accordingly determined a deficiency of gift tax based, inter alia, upon the difference between the $949,750 value reported by petitioner and the $2,300,000 value determined by him.

Respondent calculated the figure for the estimated average number of gouaches sold per year for the estate tax return using an estimated liquidation period of 25 years for the total number of gouaches in the estate (1,296), resulting in approximately 50 sales per year for the *entire* estate (1,296 ÷ 25 = 51.84). In calculating the appropriate valuation for purposes of the instant gift tax case, respondent built upon his prior valuation of the gouaches for estate tax purposes, viz, that the marketplace would absorb about 50 of these art works each year. In the case of the transfers in trust of 153/154 gouaches to the Davidson children and the Rower children (transfers 3 through 6), respondent used approximately the same liquidation rate (51 per year) for *each* gift that he had assumed for estate tax purposes for the *entire* estate. For the transfers to the Davidson Trust and the Rower Trust (transfers 1 and 2), however, respondent assumed a liquidation of 61 gouaches per year for each of the gifts.

Apparently from the date of the gift until March 31, 1978, the exclusive representative for the sale of the gouaches was the Perls Gallery of New York City. Beginning April 1, 1978, and continuing until April 1, 1984, the exclusive representative was M. Knoedler & Co., Inc., of New York City. Thereafter, and continuing for a period of 5 years, the exclusive representative was the Pace Gallery of New York City.

The number of gouaches which were actually sold during the years 1977 through 1984 is as follows:

TABLE 3

NUMBER OF GOUACHES SOLD

| Year ended | Davidson Trust | Davidson Children Trust | Rower Trust | Rower Children Trust | Total |
|---|---|---|---|---|---|
| 10/77 | 16 | 14 | 16 | 6 | 52 |
| 10/78 | 20 | 12 | 18 | 20 | 70 |
| 10/79 | 34 | 31 | 31 | 25 | 121 |
| 10/80 | 14 | 6 | 10 | 15 | 45 |
| 10/81 | 9 | 14 | 12 | 17 | 52 |

TABLE 3

(cont'd)

NUMBER OF GOUACHES SOLD

| Year ended | Davidson Trust | Davidson Children Trust | Rower Trust | Rower Children Trust | Total |
|---|---|---|---|---|---|
| 10/82 | 7 | 6 | 3 | 4 | 20 |
| 10/83 | 3 | 4 | 1 | - - - | 8 |
| 10/84 | - - - | 1 | - - - | - - - | 1 |
| Total | 103 | 88 | 91 | 87 | 369 |
| Average number sold per year during the years 1977–1984 | 13 | 11 | 11 | 11 | 46 |
| Average number sold per year during the years 1977–1982 | 17 | 14 | 15 | 14 | 60 |

On her gift tax return, petitioner claimed the annual donee exclusion pursuant to section 2503 of $3,000 for each income beneficiary of each of the four trusts, viz, six persons, for an aggregate of $18,000 of total annual donee exclusions. Respondent determined that such exclusions were not allowable.

## OPINION

The first issue for decision is whether petitioner's transfers on December 21, 1976, to the four trusts, involving six beneficiaries, constituted four or six separate gifts.

In the present case, there were four transfers made to four trusts. Two of these trusts, the Davidson Trust and the Rower Trust, each had one beneficiary, while the remaining two trusts, the Davidson Children Trust and the Rower Children Trust, each had two beneficiaries.

Petitioner apparently contends that because four transfers were made to four trusts, only four gifts were made, despite the fact that there were six beneficiaries.[8]

Respondent's position that six gifts are presented for valuation purposes is well fortified both in the law and in the provisions of the trust instruments, themselves. It is well

---

[8]Petitioner inconsistently claims, however, that for purposes of the annual exclusion under sec. 2503, six gifts were made. See discussion infra.

settled that gifts in trust are to be regarded for gift tax purposes as gifts to the beneficiaries rather than to the trustees. *Helvering v. Hutchings*, 312 U.S. 393, 396 (1941); *United States v. Pelzer*, 312 U.S. 399, 401–402 (1941); *Jones v. Commissioner*, 29 T.C. 200, 210 (1957); *Avery v. Commissioner*, 3 T.C. 963, 970 (1944). The Davidson Children Trust and the Rower Children Trust both provide "The Trustees shall divide the Trust Estate into two equal parts, and shall hold, invest and reinvest such parts as separate trust funds" and "the Trustees shall pay over the net income in equal shares to the beneficiaries."

It follows that for purposes of the gift tax and for purposes of valuation, there were six separate gifts. The two gifts to the Davidson Trust and to the Rower Trust each consisted of 306 gouaches. For calculation purposes, the four gifts to the Davidson Children Trust and to the Rower Children Trust should be divided into four approximately equal portions, two gifts consisting of 154 gouaches and two gifts consisting of 153 gouaches. Respondent properly did this.

The second issue for decision is whether a blockage discount[9] should be applied in valuing petitioner's gifts, and if so, should it be applied to each gift separately or applied on an aggregate basis, and in what amounts.

It is noteworthy that the parties agree that the average retail[10] value per gouache was $2,375. Thus, this is not a strict valuation case per se, but rather the controversy centers on the appropriate blockage discount, if any, to be applied.

Respondent initially contends that it is inappropriate to apply the blockage discount in the gift tax area. The discount is appropriate in the estate tax area since the estate may have difficulty disposing of a large block of inventory; on the other hand, in the gift tax area, contends respondent, the discount is inappropriate because gifts, unlike deaths, are contemplated events and one can manipulate the circumstances surrounding the transfers. However the regulations and the case law are squarely to the contrary. Sec. 25.2512–2(e), Gift Tax Regs.;

---

[9]The blockage rule provides that when a commodity is being valued, the size of the block being valued, and not simply the value determined for each item, is a relevant consideration. See *Rushton v. Commissioner*, 498 F.2d 88, 90, rehearing denied 502 F.2d 1167 (5th Cir. 1974), affg. 60 T.C. 272 (1973).

[10]Sec. 25.2512-2, Gift Tax Regs., indicates that the value to be used for gift tax purposes is the price at which the item would be sold at retail.

*Rushton v. Commissioner,* 498 F.2d 88, rehearing denied 502 F.2d 1167 (5th Cir. 1974), affg. 60 T.C. 272 (1973); *Whittemore v. Fitzpatrick,* 127 F. Supp. 710 (D. Conn. 1954). As such, we feel that the blockage discount may be applied to gifts.

Petitioner argues that a discount should be applied to the 1,226 gouaches on an aggregate basis in order to take into account the time necessary for an orderly liquidation. Respondent, on the other hand, contends that the blockage discount must be applied to each gift separately. In support of this proposition respondent cites section 25.2512–2(e), Gift Tax Regs.; *Rushton v. Commissioner, supra*; and *Whittemore v. Fitzpatrick, supra.*

Section 25.2512–2(e), Gift Tax Regs., states in pertinent part that:

If the donor can show that the block of stock to be valued, *with reference to each separate gift,* is so large in relation to the actual sales on the existing market that it could not be liquidated in a reasonable time without depressing the market, the price at which the block could be sold as such outside the usual market, as through an underwriter, may be a more accurate indication of value than market quotations. * * * [Emphasis added.]

Petitioner contends that the principles set forth in this regulation apply only when valuing stocks and bonds and are not applicable when valuing works of art. Under petitioner's approach we would value the gouaches under the more general guidelines appearing in section 25.2512–1, Gift Tax Regs., which provides in part that:

The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts. * * *

The relevant facts petitioner would have us examine are the ability of an art dealer to control the market in terms of determining how many gouaches would be available for sale at any one time, and the length of time necessary to liquidate the art work. These same factors are relevant in determining the amount of the blockage discount. In fact, in determining the appropriate blockage discount for both estate and gift tax purposes, the length of time necessary to liquidate the gouache

holdings was a primary factor used by both parties in coming up with their results.

Thus, in effect, petitioner urges us to apply the same factors used in estimating the blockage discount without being bound by the regulation which authorizes its use. With this we cannot agree. If petitioner desires the benefits of the blockage discount, she must also be willing to accept its limitations. Accordingly, the blockage discount must be applied with reference to each separate gift.

We are not without authority in this area. In *Rushton v. Commissioner, supra,* the Fifth Circuit was requested to value 16 gifts of unlisted common stock. The court held that section 25.2512–2(e), Gift Tax Regs., required it to apply the blockage discount to each gift separately without considering companion donations. It reasoned:

An aggregation principle, however, directly contradicts the regulatory intent of appraisal in a realistic market; for under such a system the question becomes not what would each block have returned if sold in the market existing at the time of valuation, but rather what would the same block have brought in a fictitious market, one flooded by the other gifts.[11] [498 F.2d at 93.]

The blockage discount has also been applied to separate rather than to consolidated gifts in the area of closely held stock. *Whittemore v. Fitzpatrick, supra.* Thus, it hardly seems a quantum leap to extend these principles to the valuation of art work, particularly because, as petitioner admits on brief, liquidating a block of closely held securities is analogous to liquidating a block of 1,226 gouaches. In both cases, there is no established market in which to make a disposition, and both involve sales which are privately negotiated between the buyer and the seller. We therefore conclude that a blockage discount must be determined separately for each of the six gifts.

Having decided that separate discount rates are required, we must now determine the appropriate discount rates for each gift. It is here that we part company with respondent.

---

[11]Petitioner apparently contends that *Rushton* is distinguishable because there, four blocks of stock were gifted over the course of 15 months, unlike here, where all of the gifts were made simultaneously. This is not a relevant distinction because in *Rushton*, the court concluded that even gifts made on the same day could not be aggregated for purposes of determining the blockage discount. 498 F.2d at 91–95.

Respondent calculated the blockage discount by estimating the number of gouaches to be sold per year for each of the six gifts. (See table 2, p. 718.) Then, using this figure, respondent computed the number of years it would take to liquidate each block. This next figure was then used as a basis for determining the appropriate annuity factor to be applied in calculating the discount. Thus, respondent treated the gouaches here as a large number of illiquid assets, whose worth could be realized only through liquidation over a period of time at a uniform rate, yielding an assumed amount of dollars each year over such period. Under this approach, realization of the value of the art works can be compared to the right to receive an annuity of the stated amount over the given period, and the present worth of such annuity can be determined from the appropriate valuation tables. Sec. 25.2512–5, Gift Tax Regs. The appropriate valuation factor reflects a discount for the amount of time the various installments of the annuity are deferred. As applied in the instant case, the effect is to grant a blockage discount in a somewhat more sophisticated manner than the usual method of applying a single percentage discount to the retail value of the items at the date of the gift. We are not prepared to say that respondent's theory is unreasonable, but its accuracy obviously depends upon the validity of respondent's assumptions regarding the number of gouaches that can be liquidated each year and, thus, the length of time such liquidation will require.

As table 2 indicates, respondent calculated the selloff period for the blocks of 306 gouaches using estimated sales of 61 gouaches per year. The blocks of 154 and 153 gouaches were computed to be sold at a rate of 51 per year. The problem with respondent's method is that it yields a total annual sales figure for all six blocks of approximately 330. This simply does not comport with reality, as revealed by this record. The record shows that the average sales figure for all four trusts (i.e., all six blocks) during the years 1977 through 1982 was 60 per year.[12] (See table 3, pp. 719–720.) We agree that the discount

_____

[12]Sales of art work before and after the date of the gift may be used to corroborate the ultimate determination of value provided they are not too far removed from such date. *Estate of Smith v. Commissioner*, 57 T.C. 650, 659 n. 8 (1972), affd. on other grounds 510 F.2d 479 (2d Cir. 1975), cert. denied 423 U.S. 827 (1975). We realize that *Estate of Smith* is an estate tax case, however, the provisions relating to value in the gift and estate tax areas have been held to be in pari materia. *Merrill v. Fahs*, 324 U.S. 308, 311–313 (1945). The average annual sales figure was calculated by

should be calculated for each gift separately, but it is not realistic to apply the total sales figures for *all* gouaches sold during the year to *each* gift, separately, in determining the liquidation period. Rather, it seems more logical to us to use the actual average annual sales for *each* of the six gifts to determine the relative liquidation periods. There is no evidence that any of the trusts withheld gouaches from the market during the period 1977–82. To the contrary, they were placed with an art gallery in New York City and were all for sale.

While respondent contends that *Rushton v. Commissioner, supra,* requires us to look to what the market would absorb (here 60 gouaches per year) and apply this figure to each gift, separately, to determine the liquidation period, we believe that because blockage is a question of fact rather than a rule of law (*Estate of Sawade v. Commissioner,* T.C. Memo. 1984–626; *Estate of Christie v. Commissioner,* T.C. Memo. 1974–95; see *Safe Deposit & Trust Co. of Baltimore v. Commissioner,* 35 B.T.A. 259 (1937), affd. 95 F.2d 806 (4th Cir. 1938)), the actual sales experience in the period is the best evidence we have of the true absorption rate of the gouaches in the marketplace, and should be preferred to determine the estimated liquidation period for the purposes of determining the appropriate amount of blockage through an annuity approach. Moreover, in *Rushton,* the court was concerned that an aggregation principle would require it to create a fictitious market, one flooded by the other gifts to determine the appropriate discount. Here, however, as we have stated, it is unnecessary to create any market fictions because we have access to the actual sales figures.

It is for these reasons that we feel that the following table, which uses the actual average annual sales figure for each of the six gifts, provides a better estimate of the blockage discount rates to be applied in determining the value of the gifts:

---

respondent without including the sales of 1983 and 1984. Respondent contends that these years were not representative because during this time the trustees entered a contract with a different gallery which did not make the same effort to market the gouaches as the previous gallery had. Petitioner has offered no evidence on this point. Without deciding the validity of respondent's contention we feel the sales for 1983 and 1984, which were substantially lower than those during the prior 6-year period, are not representative because they are too far removed from the date of the gift, Dec. 21, 1977.

TABLE 4

| Gift number | Number of gouaches in each gift | ÷ | Average number of gouaches sold per year[13] | = | Appropriate number of years required to sell off block |
|---|---|---|---|---|---|
| 1 | 306 | | 17 | | 18 |
| 2 | 306 | | 15 | | 20 |
| 3 | 154 | | 7 | | 22 |
| 4 | 153 | | 7 | | 22 |
| 5 | 153 | | 7 | | 22 |
| 6 | 154 | | 7 | | 22 |

| Gift number | Present value factor at 10 percent for annuities | × | Average number of gouaches sold per year | × | Average price per gouache | = | Value |
|---|---|---|---|---|---|---|---|
| 1 | 8.2014 | | 17 | | $2,375 | | $330,000 |
| 2 | 8.5136 | | 15 | | 2,375 | | 300,000 |
| 3 | 8.7715 | | 7 | | 2,375 | | 145,000 |
| 4 | 8.7715 | | 7 | | 2,375 | | 145,000 |
| 5 | 8.7715 | | 7 | | 2,375 | | 145,000 |
| 6 | 8.7715 | | 7 | | 2,375 | | 145,000 |
| Total value of the gifts | | | | | | | 1,210,000 |

Accordingly, we conclude that the appropriate value of the property for gift tax purposes is $1,210,000, which includes an appropriate discount for blockage.

The third issue for decision is whether petitioner is entitled to six $3,000 annual exclusions under section 2503, in computing taxable gifts for transfers of the gouaches to the four trusts.

Section 2503(b), as in effect at the time of transfer,[14] provided for the exclusion of the first $3,000 of gifts to any

---

[13]These figures are taken from table 3, with slight variations to account for the fact that six rather than four gifts were made.

[14]As it read in 1976, sec. 2503(b) provided:

SEC. 2503(b). EXCLUSIONS FROM GIFTS.—In computing taxable gifts for the calendar quarter, in the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1971 and subsequent calendar years, $3,000 of such gifts to such person less the aggregate of the amounts of such gifts to such person during all preceding calendar quarters of the calendar year shall not, for purposes of subsection (a), be included in the total amount of gifts made during such quarter. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person.

person[15] during a calendar year. The exclusion, however, is only available to gifts "other than gifts of future interests in property," or in other words to present interests. Accordingly, the determination of this issue requires the inquiry whether, at the date of each gift, the interest received by a beneficiary was a present or future interest. *Blasdel v. Commissioner*, 58 T.C. 1014, 1017 (1972), affd. per curiam 478 F.2d 266 (5th Cir. 1973). For gift tax purposes the term "present interest in property" is defined as "An unrestricted right to the immediate use, possession, or enjoyment of property or the income from property (such as a life estate or term certain)." Sec. 25.2503–3(b), Gift Tax Regs. The term "future interest in property" refers to "any interest or estate, whether vested or contingent, limited to commence in possession or enjoyment at a future date." H. Rept. 708, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 478; S. Rept. 665, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 526. See also *Commissioner v. Disston*, 325 U.S. 442, 446 (1945), revg. 144 F.2d 115 (3d Cir. 1944), revg. a Memorandum Opinion of this Court; sec. 25.2503–3(a), Gift Tax Regs. The Supreme Court in *Fondren v. Commissioner*, 324 U.S. 18, 20 (1945), refined these definitions by indicating that the donor is entitled to the exclusion only if he has conferred on the donee "the right to substantial present economic benefit."

These principles are exemplified in *Commissioner v. Disston, supra*, where the Supreme Court concluded that a future interest was created when the trust had income but limitations were placed on its disbursement. In that context the Court explained:

In the absence of some indication from the face of the trust or surrounding circumstances that a steady flow of some ascertainable portion of income to the [beneficiary] would be required, there is no basis for a conclusion that there is a gift of anything other than for the future. The taxpayer claiming the exclusion must assume the burden of showing that the value of what he claims is other than a future interest. * * * [325 U.S. at 449.]

*Disston* thus requires the taxpayer to prove three things: (1) That the trust will receive income, (2) that some portion of that income will flow steadily to the beneficiary, and (3) that

---

[15]In the case of gifts made in trust, the beneficiary, not the trust or trustee, is the "person" to whom the statute refers. *Helvering v. Hutchings*, 312 U.S. 393, 396 (1941).

the portion of income flowing out to the beneficiary can be ascertained. See also *Maryland National Bank v. United States,* 609 F.2d 1078, 1080 (4th Cir. 1979).

Application of these principles to the facts of this case does not present a problem. Petitioner has failed to meet even the first prong of the *Disston* test. At the date of transfer, although the beneficiaries had the right to periodic distributions of income, the corpora of the trusts in question merely consisted of the gouaches. There has been no showing that the trust assets will generate income for distribution to the beneficiaries. Petitioner has not, for example, shown that the gouaches will generate rental income or, for that matter, any other type of income. In *Maryland National Bank v. United States, supra,* the Fourth Circuit was faced with determining whether the gift of an unqualified right to receive profits from the operation of a partnership's business was a present interest. In holding that a future interest was created, the court stated "The executor has failed to prove that the partnership has produced any income for distribution to the beneficiaries, that steps have been taken to eliminate the losses it has sustained annually, or that there will be any income in the foreseeable future." 609 F.2d at 1080.[16] Similarly, here the record does not establish that the beneficiaries will actually receive a steady flow of income or any income whatsoever.[17]

Petitioner, on the other hand, contends that a present interest exists because the trustees have the discretionary

---

[16]Petitioner contends that *Maryland National Bank v. United States,* 609 F.2d 1078, 1080 (4th Cir. 1979), is distinguishable from the present case because there, unlike here, the trustees were prohibited from converting the non-income-producing assets into income-producing assets. The court in *Maryland National Bank* relied on two points in reaching its conclusion: that neither the circumstances of the case *nor* the provisions of the trust established that the beneficiaries received a steady flow of income. Here we are only concerned with whether the circumstances of the case provide a basis for determining that the beneficiaries would receive a steady flow of income. The provisions of the trust will be examined *infra.*

[17]Nor can it be said that at the date of gift a right to a "substantial present economic interest" was conferred on the donees. Although petitioner could contend that the beneficiaries have received a substantial present economic interest in that they have apparently received the proceeds from the sales of the gouaches (though this is far from made clear in the record), the distribution of the proceeds (i.e., trust corpus) is at the discretion of the trustees, and thus, not a *right* of the beneficiaries. It is well settled that where, as in the instant case, there is a gift of income coupled with a power in the trustee to encroach upon principal at such times and in such amounts as it deems proper, the interest of the beneficiaries in such possible advancement is a future interest. *Jones v. Commissioner,* 29 T.C. 200, 210 (1957); *Fondren v. Commissioner,* 324 U.S. 18, affg. 141 F.2d 419 (5th Cir. 1944), affg. 1 T.C. 1036 (1943); *Commissioner v. Disston,* 325 U.S. 442, 446, 447 (1945), revg. 144 F.2d 115 (3d Cir. 1944), revg. a Memorandum Opinion of this Court; *Kniep v. Commissioner,* 172 F.2d 755, 756 (8th Cir. 1949), affg. 9 T.C. 943 (1947).

power under the terms of the trusts to convert non-income-producing assets (i.e., the gouaches) into income-producing property. Moreover, petitioner argues that pursuant to the State law governing the terms of the trusts, a fiduciary duty is imposed on the trustees to liquidate the gouaches and convert them into income-producing property. In support of this proposition petitioner cites *Rosen v. Commissioner*, 397 F.2d 245 (4th Cir. 1968), revg. 48 T.C. 384 (1967). In *Rosen*, the Fourth Circuit held that the donee exclusion was allowable, relying partially on the fact that the trustees had the power to sell non-income-producing assets (i.e., stock which had no dividend history) and to reinvest the proceeds in income-producing property.

*Rosen* is inapposite to the facts herein for several reasons. First, *Rosen* was actually addressing the third prong of the *Disston* test, that is, whether the income interest was subject to valuation. There the Government had conceded that "a valuable right to receive income has been donated" (379 F.2d at 248), and that "a *present* income interest * * * was in fact donated." 397 F.2d at 245 (emphasis in original). Here no such concessions have been made. Second, in *Berzon v. Commissioner*, 63 T.C. 601 (1975), affd. 534 F.2d 528 (2d Cir. 1976), we refused to follow *Rosen*. There we disagreed with the Fourth Circuit's reliance in *Rosen* on the power of the trustees to sell gifted shares and reinvest the proceeds in income-producing property where there was no direction in the trust indenture or inclination shown by the trustees to do so. We stated, "In such cases the possibility itself that the trustees would sell the gifted stock and reinvest in income-producing property is so uncertain as to be incapable of being valued." 63 T.C. at 618–619. Thus, even assuming, arguendo, that a present interest was created, it is not capable of valuation because it is impossible to predict with certainty whether and to what extent the trustees would sell the gouaches and invest in income-producing property. This proposition is further supported by the Second Circuit[18] which, in affirming *Berzon*,

[18]In the instant case, any appeal lies to the Court of Appeals for the Second Circuit and thus we must consider that court's interpretation of the law in this area. *Golsen v. Commissioner*, 54 T.C. 742, 756–757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). As indicated in the text, *Berzon v. Commissioner*, 63 T.C. 601 (1975), affd. 534 F.2d 528 (2d Cir. 1976), was affirmed by the Second Circuit and thus we feel compelled to apply the *Berzon* reasoning, rather than using that of the court in *Rosen v. Commissioner*, 397 F.2d 245 (4th Cir. 1968), revg. 48

stated "the [actuarial] tables are not appropriate in the case of a *non*-income yielding investment, for in such a case one can predict with assurance that the income generated will be *zero* and, therefore, that the actuarial tables would produce an obviously erroneous result." 534 F.2d at 532 (emphasis in original).[19] Accord *Stark v. United States*, 477 F.2d 131 (8th Cir. 1973); *Fischer v. Commissioner*, 288 F.2d 574 (3d Cir. 1961), affg. a Memorandum Opinion of this Court.

Finally, although the trust indentures in the present case authorize the trustees to sell the gouaches and reinvest the proceeds in income-producing property (as well as non-income-producing property), there is no indication in the record that they intended to reinvest in such a manner. In fact, the record merely indicates that when a gouache was sold a check was issued to the trustee. No mention is made as to whether the proceeds were actually invested in any type of property.

In sum, neither the circumstances of the case nor the provisions of the trust indentures realistically establish that the beneficiaries will receive a steady flow of income. We therefore conclude that petitioner's gifts did not create a present interest that qualified for exclusion from the gift tax.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

T.C. 384 (1967). Moreover, the Fourth Circuit seems to have backed down from the stance originally taken in *Rosen*. See *Maryland National Bank v. United States, supra* at 1081–1083.

[19]Petitioner contends that *Berzon* is distinguishable from *Rosen* because in *Berzon*, unlike *Rosen*, there was a shareholders' agreement restricting the transfer of the stock and because the trustee manifested no intention to generate income from its investments. Without deciding the validity of these distinctions, we feel that *Rosen* is not applicable to the facts here because of the reasons enumerated in the text.